The decision of the lower court was reversed on March 30, 1871, in the following opinion, per
Thompson, C. J.
It has long been a rule in this State, that where a party might be a witness by divesting himself of a disqualifying interest, such as a stock in a corporation and the like, his competency after having done so, is not affected by showing that he made the transfer for the purpose of being a witness; Smith vs. The Bank of Washington, 5 S. & R. 318, and like cases. The purpose of the transfer is of no consequence if it be fully and completely-accomplished and the interest divested.
The witness, Pierce, whose testimony was excluded by the Court gave sufficient testimony to show a sale and transfer of a portion of the stock held in company of the plaintiff in error, and if he had told no more his testimony might have gone to the jury. But that was not the case. He says: “The other two hundred shares I transferred to Clement March for the purpose of *345 qualifying myself to give evidence in the case.” What the nature of the transfer was, how made, on what consideration, or as a gift he does not say. He does not give, in what he says the opportunity to the court to judge whether he had parted with the title, or merely passed it over some to person to hold until he should testify. It was not for him to interpret the word transfer. The court should have been put in possession of facts to enable it to say there had been a transfer of the stock which divested his interest. The same may be said of the witnesses’ declaration that he “held no relation to the company.” It did not necessarily imply that he held no stock in the company it might or might not, it was equivocal, and was far from sufficient to show a divestiture of his disqualifying interest. The court committed no ■ error in rejecting the testimony which constitues this bill of exception. Now, or hereafter, no such objection to the witness can arise, whether he owns or does not own stock in the company, a different rule exists on the subject of tire competency of witnesses from that in force when the testimony was taken before.
We see nothing in the 2d, 3d and 4,th, Assignments of Error to call for the reversal of this judgment. It is true as stated by the court, that the fact that screens were made and put up in the colliery of the defendant by the plaintiff', was undoubtedly evidence on the question of whose credit they were furnished upon, and might be abundant for that purpose.
Who could doubt its sufficiency if done in the presence, and with the approbation or assent of the superintendent of the company. It was certainly prima facie that it was done for the company until an explanation to the contrary was given.
The idea that the learned Judge might not peremptorially charge upon the testimony of Norton,, a witness for the defendants, so far as his testimony was against them is a mistake. As to them they were bound by it, unless they showed wherein it was a mistake, which they did not attempt to do. It was no error therefore to submit the facts coming from the defendants own witness, undisputed by them, even if the court believed him a false witness as to the other side. The defendants could not so treat him after having given him credit by calling him. A party *346 so doing avouches the truth of the witness, and cannot go back upon him, unless the court allow it on the ground that he was deceived by the witness into calling him.
The remark attributed to. the learned Judge, “that this bill, though receipted, was not all paid,” as showing an assumption alleged of a fact by the court, is scarcely ingenuous, for he added “it is for you to determine what balance remains unpaid.” It seems to us that whatever of importance was in this matter it was referred to the jury for their deliberation.
The complaint that the learned Judge erred in charging the jury peremptorily that “the testimony of Norton is impeached, is not to be believed,” is certainly made out. That was a question solely within the province of the jury and the remark of the learned Judge was beyond doubt transgressive of that province. We need not spend time elucidating a matter so plain as this. The jury would undoubtedly look upon the instruction as binding them to discard the witnesses’ testimony without further investigation, at least that was the direct tendency of the remark. It was error on part of the learned Judge, and for this we must reverse this judgment.
Although the learned Judge declined any special answer to the defendant’s points,.'we think the instructions specifically sought by them may be regarded as having been given in the charge to the jury. It would, however, have been much more satisfactory to the party and to this court had answers to the points been given seriatim. There ought always be time for this. Doubtless on another trial more care will be taken in this respect.
Judgment reversed and venire de non awarded.